UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

UNITED STATES OF AMERICA

v.                                             CRIMINAL NO. 4:16-CR-408

ANDREW IAN FARMER

## PLEA AGREEMENT

The United States of America, by and through Ryan K. Patrick, United States Attorney for the Southern District of Texas, Justin R. Martin, Assistant United States Attorney, and Michael Chu, Assistant United States Attorney, and the defendant, Andrew Ian Farmer ("Defendant"), and Defendant's counsel, pursuant to Rule 11(c)(1)(A) of the Federal Rules of Criminal Procedure, state that they have entered into an agreement, the terms and conditions of which are as follows:

### Defendant's Agreement

1.      Defendant agrees to plead guilty to Counts One and Two of the Information. Count One charges Defendant with conspiracy to commit wire fraud and securities fraud, in violation of 18 U.S.C. § 371. Count Two charges Defendant with securities fraud, in violation of 15 U.S.C. §§ 77q(a) and 77x. Defendant, by entering this plea, agrees that he is waiving any right to have the facts that the law makes essential to the punishment either charged in the indictment, or proved to a jury or proven beyond a reasonable doubt.

### Punishment Range

2.      The statutory maximum penalty for each violation of 18 U.S.C. § 371, is a term of imprisonment of not more than 5 years and a fine of not more than $250,000. The statutory maximum penalty for each violation of 15 U.S.C. §§ 77q(a) and 77x, is a term of imprisonment of 5 years and a fine of not more than $250,000. Alternatively, pursuant to 18 U.S.C. § 3571(d), if

any person derives pecuniary gain from the offense, or if the offense results in pecuniary loss to a person other than the defendant, the defendant may be fined not more than the greater of twice the gross gain or twice the gross loss, unless the imposition of such a fine would unduly complicate or prolong the sentencing process. Additionally, Defendant may receive a term of supervised release after imprisonment of not more than 3 years. 18 U.S.C. §§ 3559(a)(4) and 3583(b)(2). Defendant acknowledges and understands that if he should violate the conditions of any period of supervised release which may be imposed as part of his sentence, then Defendant may be imprisoned for not more than 2 years, without credit for time already served on the term of supervised release prior to such violation. 18 U.S.C. §§ 3559(a)(4) and 3583(e)(3). Defendant understands that he cannot have the imposition or execution of the sentence suspended, nor is he eligible for parole.

### Mandatory Special Assessment

3.      Pursuant to 18 U.S.C. § 3013(a)(2)(A), immediately after sentencing, Defendant will pay to the Clerk of the United States District Court a special assessment in the amount of one hundred dollars ($100.00) per count of conviction. The payment will be by cashier's check or money order, payable to the Clerk of the United States District Court, c/o District Clerk's Office, P.O. Box 61010, Houston, Texas 77208, Attention: Finance.

### Cooperation

4.      The parties understand this agreement carries the potential for a motion for departure under Section 5K1.1 of the Sentencing Guidelines. Defendant understands and agrees that whether such a motion is filed will be determined solely by the United States through the United States Attorney for the Southern District of Texas. Should Defendant's cooperation, in the

2

sole judgment and discretion of the United States, amount to "substantial assistance," the United States reserves the sole right to file a motion for departure pursuant to Section 5K1.1 of the United States Sentencing Guidelines. Defendant further agrees to persist in that plea through sentencing, fully cooperate with the United States, the SEC, and any other law enforcement agency designated by the United States, not oppose the forfeiture of assets contemplated in paragraphs 28-32 of this agreement. Defendant understands and agrees that the United States will request that sentencing be deferred until that cooperation is complete.

5.    Defendant understands and agrees that "fully cooperate," as that term is used herein, includes providing all information relating to any criminal activity known to Defendant, including but not limited to fraud. Defendant understands that such information includes both state and federal offenses arising therefrom. In that regard:

(a)    Defendant agrees that this plea agreement binds only the United States Attorney for the Southern District of Texas and Defendant; it does not bind any other United States Attorney or any other unit of the Department of Justice;

(b)    Defendant agrees to testify truthfully as a witness before a grand jury or in any other judicial or administrative proceeding when called upon to do so by the United States. Defendant further agrees to waive his Fifth Amendment privilege against self-incrimination for the purpose of this agreement;

(c)    Defendant agrees to voluntarily attend any interviews and conferences as the United States may request;

(d)    Defendant agrees to provide truthful, complete and accurate information and testimony and understands any false statements made by the defendant to the Grand Jury or at any court proceeding (criminal or civil), or to a government agent or attorney, can and will be prosecuted under the appropriate perjury, false statement, or obstruction statutes;

3

(e)     Defendant agrees to provide to the United States all documents in his possession or under his control relating to all areas of inquiry and investigation; and

(f)     Should the recommended departure, if any, not meet Defendant's expectations, the Defendant understands that he remains bound by the terms of this agreement and cannot, for that reason alone, withdraw his plea.

### Waiver of Appeal and Collateral Review

6.      Defendant is aware that 28 U.S.C. § 1291, and 18 U.S.C. § 3742, afford a defendant the right to appeal the conviction and sentence imposed. Defendant is also aware that 28 U.S.C. § 2255, affords the right to contest or "collaterally attack" a conviction or sentence after the judgment of conviction and sentence has become final. Defendant knowingly and voluntarily waives the right to appeal or "collaterally attack" the conviction and sentence, except that Defendant does not waive the right to raise a claim of ineffective assistance of counsel on direct appeal, if otherwise permitted, or on collateral review in a motion under 28 U.S.C. § 2255. Defendant's knowing and voluntary waiver of the right to appeal or collaterally attack the conviction and sentence includes waiving the right to raise on appeal or on collateral review any argument that (1) the statute(s) to which the defendant is pleading guilty is unconstitutional and (2) the admitted conduct does not fall within the scope of the statute(s). In the event Defendant files a notice of appeal following the imposition of the sentence or later collaterally attacks his conviction or sentence, the United States will assert its rights under this agreement and seek specific performance of these waivers.

7.      In agreeing to these waivers, Defendant is aware that a sentence has not yet been determined by the Court. Defendant is also aware that any estimate of the possible sentencing range under the sentencing guidelines that he may have received from his counsel, the United States or the Probation Office, is a prediction and not a promise, did not induce his guilty plea, and

4

is not binding on the United States, the Probation Office or the Court. The United States does not make any promise or representation concerning what sentence the defendant will receive. Defendant further understands and agrees that the United States Sentencing Guidelines are "effectively advisory" to the Court. *See United States v. Booker*, 543 U.S. 220 (2005). Accordingly, Defendant understands that, although the Court must consult the Sentencing Guidelines and must take them into account when sentencing Defendant, the Court is not bound to follow the Sentencing Guidelines nor sentence Defendant within the calculated guideline range.

8. Defendant understands and agrees that each and all waivers contained in the Agreement are made in exchange for the concessions made by the United States in this plea agreement.

### The United States' Agreements

9. The United States agrees to each of the following:

(a) If Defendant pleads guilty to Counts One and Two of the Information, and persists in that plea through sentencing, and if the Court accepts this plea agreement, the United States will move to dismiss any remaining counts of the Indictment at the time of sentencing;

(b) At the time of sentencing, the United States agrees not to oppose Defendant's anticipated request to the Court and the United States Probation Office that he receive a two (2) level downward adjustment pursuant to section 3E1.1(a) of the United States Sentencing Guidelines, should Defendant continue to accept responsibility as contemplated by the Sentencing Guidelines through sentencing;

(c) If the Court determines that Defendant qualifies for an adjustment under section 3E1.1(a) of the United States Sentencing Guidelines, and the offense level prior to

5

operation of section 3E1.1(a) is 16 or greater, the United States will move under section 3E1.1(b) for an additional one-level reduction because Defendant timely notified authorities of his intent to plead guilty, thereby permitting the United States to avoid preparing for trial and permitting the United States and the Court to allocate their resources more efficiently.

## Agreement Binding - Southern District of Texas Only

10. The United States Attorney's Office for the Southern District of Texas agrees that it will not further criminally prosecute Defendant in the Southern District of Texas for offenses arising from conduct charged in the indictment. This plea agreement binds only the United States Attorney's Office for the Southern District of Texas and Defendant. It does not bind any other United States Attorney's Office. The United States Attorney's Office for the Southern District of Texas will bring this plea agreement and the full extent of Defendant's cooperation to the attention of other prosecuting offices, if requested.

## United States' Non-Waiver of Appeal

11. The United States reserves the right to carry out its responsibilities under guidelines sentencing. Specifically, the United States reserves the right:

(a) to bring its version of the facts of this case, including its evidence file and any investigative files, to the attention of the Probation Office in connection with that office's preparation of a presentence report;

(b) to set forth or dispute sentencing factors or facts material to sentencing;

(c) to seek resolution of such factors or facts in conference with Defendant's counsel and the Probation Office;

(d)    to file a pleading relating to these issues, in accordance with section 6A1.2 of the United States Sentencing Guidelines and 18 U.S.C. § 3553(a); and

(e)    to appeal the sentence imposed or the manner in which it was determined.

### Sentence Determination

12.    Defendant is aware that the sentence will be imposed after consideration of the United States Sentencing Guidelines and Policy Statements, which are only advisory, as well as the provisions of 18 U.S.C. § 3553(a). Defendant nonetheless acknowledges and agrees that the Court has authority to impose any sentence up to and including the statutory maximum set for the offense(s) to which Defendant pleads guilty, and that the sentence to be imposed is within the sole discretion of the sentencing judge after the Court has consulted the applicable Sentencing Guidelines. Defendant understands and agrees that the parties' positions regarding the application of the Sentencing Guidelines do not bind the Court and that the sentence imposed is within the discretion of the sentencing judge. If the Court should impose any sentence up to the maximum established by statute, or should the Court order any or all of the sentences imposed to run consecutively, Defendant cannot, for that reason alone, withdraw a guilty plea, and will remain bound to fulfill all of the obligations under this plea agreement.

### Rights at Trial

13.    Defendant understands that by entering into this agreement, he surrenders certain rights as provided in this plea agreement. Defendant understands that the rights of a defendant include the following:

7

(a)     If Defendant persisted in a plea of not guilty to the charges, defendant would have the right to a speedy jury trial with the assistance of counsel. The trial may be conducted by a judge sitting without a jury if Defendant, the United States, and the court all agree.

(b)     At a trial, the United States would be required to present witnesses and other evidence against Defendant. Defendant would have the opportunity to confront those witnesses and his attorney would be allowed to cross-examine them. In turn, Defendant could, but would not be required to, present witnesses and other evidence on his own behalf. If the witnesses for Defendant would not appear voluntarily, he could require their attendance through the subpoena power of the court; and

(c)     At a trial, Defendant could rely on a privilege against self-incrimination and decline to testify, and no inference of guilt could be drawn from such refusal to testify. However, if Defendant desired to do so, he could testify on his own behalf.

## Factual Basis for Guilty Plea

14.     Defendant is pleading guilty because he is in fact guilty of the charges contained in Counts One and Two of the Information. If this case were to proceed to trial, the United States could prove each element of the offenses beyond a reasonable doubt. The following facts, among others would be offered to establish Defendant's guilt:

15.     From in or about May 2011 through May 10, 2017, Andrew Ian Farmer conspired with Thomas Galen Massey, Eddie Douglas Austin, Jr., John David Brotherton, Scott Russell Sieck, Charles Earl Grob, Jr., and others ("the Group") to perpetrate a securities fraud scheme to defraud investors of money by fraudulently manipulating the market price and demand for various microcap securities, commonly referred to as "penny stocks." Initially, these securities had little

8

worth; then members of the conspiracy would fraudulently manipulate the price and demand for the stock through various techniques including false and misleading press releases, match trades, and wash sales. This type of scheme is commonly referred to as a "pump and dump scheme."

16.     During the course of this conspiracy, Farmer and other members of the Group described above, executed pump and dump schemes involving securities in the following twelve companies ("the Companies"):

      (a)    Onyx Service & Solutions, Inc. ("Onyx");

      (b)    Nova Mining Corp. ("Nova Mining");

      (c)    DoMark International, Inc. ("DoMark");

      (d)    Chimera Energy Corp. ("Chimera");

      (e)    Massive Dynamics, Inc. ("Massive Dynamics");

      (f)    Solar America Corp. ("Solar America");

      (g)    BlueFire Equipment Corporation ("BlueFire Equipment");

      (h)    Puget Technologies;

      (i)    GankIt.com;

      (j)    Horizon Energy Corporation ("Horizon Energy");

      (k)    NHale, Inc. ("NHale"); and

      (l)    Valmie Resources Inc. ("Valmie Resources");

17.     Farmer and other members of the Group would implement each scheme using various techniques including, but not limited to, the following:

      (a)    taking control of all or substantially all of the freely tradeable shares of each company's stock;

(b)     exercising control over the decisions made by the company and its CEOs;

(c)     providing materially false and misleading information to the public in the form of press releases, click ads, and websites to cause the public demand for the stock to increase;

(d)     timing the sale of the stock they controlled to coincide with the release of this false and misleading information in order to profit from the sale of the stock the Group controlled;

(e)     dividing the profits from the sale of the stock among the members of the group.

18.     Farmer and other members of the Group recruited straw investors to purchase stock in the Initial Public Offering ("IPO") of several of the Companies with the understanding that the IPO investors would later transfer their shares to the Group when the Group was ready to sell the stock. The purpose of temporarily transferring the stock to the IPO investors was to conceal the fact that the Group actually controlled the freely tradeable shares of the stock from regulators and the investing public.

19.     Farmer and other members of the Group also recruited individuals to open brokerage accounts in their own names acting as nominees for the Group. Some of these accounts were opened at brokerages in the United States, and some of these accounts were opened outside of the United States. Although the group controlled all or substantially all of the freely tradeable shares of stock, Farmer would divide up the shares among all of the nominee brokerage accounts so that no single account controlled more than 10% of the total outstanding shares of stock. Farmer divided up the shares among nominees in this manner to conceal the fact that the Group actually controlled the freely tradeable shares of the stock from regulators and the investing public, and to

avoid additional regulations and restrictions that apply to affiliates [1] of publicly traded corporations.

20.     Farmer also coordinated and participated in matched trades with other members of the Group for the purpose of creating a false appearance of an active trading market in the stock and to fraudulently manipulate the price and demand for the stock.

21.     In order to carry out the scheme, the Group used emails to communicate, disseminated false and misleading press releases, and made several interstate wire money transfers in furtherance of the offense.

### Breach of Plea Agreement

22.     If Defendant should fail in any way to fulfill completely all of the obligations under this plea agreement, the United States will be released from its obligations under the plea agreement, and Defendant's plea and sentence will stand. If at any time Defendant retains, conceals, or disposes of assets in violation of this plea agreement, or if Defendant knowingly withholds evidence or is otherwise not completely truthful with the United States, then the United States may move the Court to set aside the guilty plea and reinstate prosecution. Any information and documents that have been disclosed by Defendant, whether prior to or subsequent to this plea agreement, and all leads derived therefrom, will be used against defendant in any prosecution.

---

[1] The term "affiliate" is defined as "a person that directly or indirectly, through one or more intermediaries, controls or is controlled by or is under common control with, the [company]." 15 U.S.C. § 77p(f)(1). Furthermore, a person's status as a 10% shareholder is considered one of the "hallmarks" of affiliate status. *See, e.g.*, S.E.C. v. Longfin Corp., 316 F. Supp. 3d 743, 759 (S.D.N.Y. 2018)

11

### Restitution, Forfeiture, and Fines – Generally

23.     This Plea Agreement is being entered into by the United States on the basis of Defendant's express representation that he will make a full and complete disclosure of all assets over which he exercises direct or indirect control, or in which he has any financial interest. Defendant agrees not to dispose of any assets or take any action that would effect a transfer of property in which he has an interest, unless Defendant obtains the prior written permission of the United States.

24.     Defendant agrees to make complete financial disclosure by truthfully executing a sworn financial statement (Form OBD-500 or similar form) within 14 days of signing this plea agreement. Defendant agrees to authorize the release of all financial information requested by the United States, including, but not limited to, executing authorization forms permitting the United States to obtain tax information, bank account records, credit histories, and social security information. Defendant agrees to discuss and answer any questions by the United States relating to Defendant's complete financial disclosure.

25.     Defendant agrees to take all steps necessary to pass clear title to forfeitable assets to the United States and to assist fully in the collection of restitution and fines, including, but not limited to, surrendering title, executing a warranty deed, signing a consent decree, stipulating to facts regarding the transfer of title and the basis for the forfeiture, and signing any other documents necessary to effectuate such transfer. Defendant also agrees to direct any banks which have custody of his assets to deliver all funds and records of such assets to the United States.

26.     Defendant understands that forfeiture, restitution, and fines are separate components of sentencing and are separate obligations.

12

### Restitution

27.      Defendant agrees to pay full restitution to the victim(s) regardless of the count(s) of conviction. Defendant understands and agrees that the Court will determine the amount of restitution to fully compensate the victim(s). Defendant agrees that restitution imposed by the Court will be due and payable immediately and that Defendant will not attempt to avoid or delay payment. Subject to the provisions of paragraph 6 above, Defendant waives the right to challenge in any manner, including by direct appeal or in a collateral proceeding, the restitution order imposed by the Court.

### Forfeiture

28.      Defendant stipulates and agrees that the property listed in the Indictment's Notice of Forfeiture (and in any supplemental Notices) is subject to forfeiture, and Defendant agrees to the forfeiture of that property. In particular, but without limitation, Defendant stipulates that the following specific property is subject to forfeiture:

(a)      Interactive Brokers Account No. xxxx4094 in the name of Tuverga Finance Ltd.;

(b)      Bank of Cyprus Account No. xxxx3176 in the name of Tuverga Finance Ltd.; and

(c)      Hellenic Bank Account No. xxxx8701 in the name of Tuverga Finance Ltd.

29.      Defendant stipulates and agrees that Defendant obtained at least $6,000,000.00 from the criminal offenses and that the factual basis for his guilty plea supports the forfeiture of $6,000,000.00. Defendant stipulates and admits that one or more of the conditions set forth in 21 U.S.C. § 853(p), exists. Defendant agrees to forfeit any of Defendant's property in substitution, up

to a total forfeiture of $6,000,000.00. Defendant agrees to the imposition of a personal money judgment in that amount.

30.     Defendant agrees to waive any and all interest in any asset which is the subject of a related administrative or judicial forfeiture proceeding, whether criminal or civil, federal or state.

31.     Defendant consents to the order of forfeiture becoming final as to Defendant immediately following this guilty plea, pursuant to Federal Rule of Criminal Procedure 32.2(b)(4)(A).

32.     Subject to the provisions of paragraph 6 above, Defendant waives the right to challenge the forfeiture of property in any manner, including by direct appeal or in a collateral proceeding.

**Fines**

33.     Defendant understands that under the Sentencing Guidelines the Court is permitted to order Defendant to pay a fine that is sufficient to reimburse the government for the costs of any imprisonment or term of supervised release, if any. Defendant agrees that any fine imposed by the Court will be due and payable immediately, and Defendant will not attempt to avoid or delay payment. Subject to the provisions of paragraph 6 above, Defendant waives the right to challenge the fine in any manner, including by direct appeal or in a collateral proceeding.

**Complete Agreement**

34.     This written plea agreement constitutes the complete plea agreement between the United States, Defendant, and Defendant's counsel. No promises or representations have been made by the United States except as set forth in writing in this plea agreement. Defendant

14

acknowledges that no threats have been made against him and that he is pleading guilty freely and voluntarily because he is guilty.

35.     Any modification of this plea agreement must be in writing and signed by all parties.

Filed in Houston, Texas, on _____February 1_____, 2019.

_____
Andrew Ian Farmer
Defendant

Subscribed and sworn to before me on _____February 1_____, 2019.

DAVID J. BRADLEY, Clerk
UNITED STATES DISTRICT CLERK

_____
Deputy United States District Clerk

APPROVED:

Ryan K. Patrick
United States Attorney

_____
Justin R. Martin
Michael Chu
Assistant United States Attorneys

_____
Chris Flood
Attorney for Defendant

15

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

UNITED STATES OF AMERICA

v.                                      CRIMINAL NO. 4:16-CR-408

ANDREW IAN FARMER

PLEA AGREEMENT ADDENDUM

I have fully explained to Defendant his rights with respect to the pending indictment. I have reviewed the provisions of the United States Sentencing Commission's Guidelines Manual and Policy Statements and I have fully and carefully explained to Defendant the provisions of those Guidelines which may apply in this case. I have also explained to Defendant that the Sentencing Guidelines are only advisory and the court may sentence Defendant up to the maximum allowed by statute per count of conviction. Further, I have carefully reviewed every part of this plea agreement with Defendant. To my knowledge, Defendant's decision to enter into this agreement is an informed and voluntary one.

_____         2-1-2019
Attorney for Defendant             _____
                                   Date

I have consulted with my attorney and fully understand all my rights with respect to the indictment pending against me. My attorney has fully explained, and I understand, all my rights with respect to the provisions of the United States Sentencing Commission's Guidelines Manual which may apply in my case. I have read and carefully reviewed every part of this plea agreement with my attorney. I understand this agreement and I voluntarily agree to its terms.

_____         Feb 1 19
Defendant                          _____
                                   Date