```
 1                   UNITED STATES DISTRICT COURT
                    SOUTHERN DISTRICT OF TEXAS
 2                       HOUSTON DIVISION

 3   UNITED STATES OF AMERICA    *   CRIMINAL NO. H-16-408
                                 *
 4   VERSUS                      *   Houston, Texas
                                 *   June 21, 2021
 5   ANDREW IAN FARMER           *   10:45 a.m.

 6

 7                             SENTENCING
               BEFORE THE HONORABLE VANESSA D. GILMORE
 8                   UNITED STATES DISTRICT JUDGE

 9

10   For the Government:

11           Mr. Justin R. Martin
             U.S. Attorney's Office
12           1000 Louisiana Street
             Suite 2300
13           Houston, Texas 77002

14

15   For the Defendant:

16           Mr. Gerald Robert Fry
             Attorney at Law
17           405 Main Street
             Suite 602
18           Houston, Texas 77002

19

20   Court Reporter:

21           Fred Warner
             Official Court Reporter
22           515 Rusk Avenue
             Houston, Texas 77002

23

24   Proceedings recorded by mechanical stenography, produced by
     computer-aided transcription.
25
```

1          THE COURT:  United States of America versus Andrew
2    Farmer.
3               For the United States?
4          MR. MARTIN:  Justin Martin.
5          THE COURT:  Mr. Martin.
6               For the defendant.
7          MR. FRY:  Gerald Fry for the defendant, Your Honor.
8          THE COURT:  Mr. Fry.
9               Is that Mr. Farmer?  Come on up to the table at
10   least.  Come to the table, yes.  Everybody needs to be by a
11   microphone somewhere.  Mr. Farmer, you can get that mic on
12   the other side there.  There you go.
13              Can you identify yourself for the record,
14   please.
15         THE DEFENDANT:  Andrew Ian Farmer.
16         THE COURT:  We are here this morning for sentencing.
17              Mr. Martin, has the United States had a chance
18   to review the presentence investigation report, the addendum
19   and the second addendum to that report?
20         MR. MARTIN:  Yes, Your Honor, I have.
21         THE COURT:  I'm sorry?
22         MR. MARTIN:  I was going to say no objection.
23         THE COURT:  Mr. Fry, have you and your client had a
24   chance to review the presentence investigation report, the
25   addendum and the second addendum to that report?

1          MR. FRY:  Yes, Your Honor.

2          THE COURT:  Then the presentence investigation

3    report and the addendum will be placed into the record under

4    seal.  In the event that there is any appeal of this case,

5    the only portion that will not be disclosed will be that

6    portion that contains a sentencing recommendation from the

7    probation department to the Court.

8               There are no objections by the United States.

9    There was one objection that had been raised by the

10   defendant.  The defendant objected to the calculations listed

11   in paragraph number -- let me sure it's the right paragraph

12   number still.  It's still 134.  That indicated that the

13   maximum term of imprisonment was 120 months.

14              I guess the motion was based on the fact that

15   it was a five-year statutory range of imprisonment, and the

16   defendant believed that that paragraph should have reflected

17   a maximum of 60 months instead of 120 months.  But the reason

18   that it's not is because the guideline range is what guides

19   the Court's calculation in that regard, and the calculation

20   under the guidelines at 38.1 is 235 to 293 months.  And so in

21   that situation the Court can stack the sentences; but the

22   maximum, of course, would be the 120, which would be the

23   statutory maximum of five years for each count.  So that

24   information contained in paragraph 134, indicating that the

25   maximum term of imprisonment is 120 months, is actually

1  correct, Mr. Fry.  Do you see what happened there?

2          MR. FRY:  I do, Your Honor.

3          THE COURT:  Okay.

4              So the objection is overruled.

5              Mr. Fry, were there any other factual

6  inaccuracies in the report that could have an impact on

7  sentencing?

8          MR. FRY:  No, Your Honor.

9          THE COURT:  Okay.  Then the Court adopts the

10 presentence investigation report and the addendum, finds that

11 the statutory range of punishment on each of Counts 1SSS and

12 2SSS is not more than five years, supervised release on both

13 counts not more than three years.  The fine on Count 1SSS is

14 not more than $100,091,955.30, which is twice the pecuniary

15 loss.

16             On Count 2SSS not more than $250,000.

17 Restitution is $8,092,738.49.  Special assessment is $100 per

18 count for a total of $200.

19             Under the sentence guidelines, based on a total

20 offense level of 38 and a criminal history category of 1

21 provides for a guideline range of 235 to 293 months, which is

22 capped at 120 months pursuant to 5G1.1A.

23             Supervised release term is one to three years.

24             The fine range is 50,000 to $100,341,955.30.

25 Restitution is $8,092,738.49.  Special assessment is $200.

1           The United States has filed a motion for

2    downward departure under 5K1.1 making a specific

3    recommendation for the departure, and the Court will take

4    that into consideration.  It grants the motion for downward

5    departure and will take the government's recommendation into

6    consideration in determining what it believes to be the

7    appropriate sentence in this case.

8           Mr. Fry, would you like to speak on behalf of

9    your client, please?

10          MR. FRY:  Yes, Your Honor.

11          THE COURT:  Yes, please.

12          MR. FRY:  We would ask the Court, in addition to the

13   government's recommendation, to consider a probated sentence.

14          THE COURT:  A probated sentence?

15          MR. FRY:  Yes, Your Honor.

16          And one of the reasons -- the reason, I will

17   list a couple of those, Your Honor, if I may.

18          THE COURT:  Okay.

19          MR. FRY:  One is, he's been on pretrial release for

20   five years now, has not violated conditions that's listed in

21   the presentence report.  He's had a monitor.  So he's been

22   like under probation for five years.  And during that time

23   he's completely cooperated with the government and debriefed

24   many, many, many times and helped them.

25          THE COURT:  So what, you think everything should

1  just get probation in this case?

2          MR. FRY:  No.

3          THE COURT:  Only Mr. Farmer?

4          MR. FRY:  Well, under certain circumstances people

5  ought to be considered for probation.  I think he's reformed

6  himself in the five years.  He is now working --

7          THE COURT:  Wait, wait, wait, stop.  I need an

8  answer to my question, because he is not getting less time

9  than all these other people.  So you're trying to say that

10  everybody in this whole case involving over a

11  fifty-million-dollar loss should get probation?

12          MR. FRY:  I can't speak for the other people, Your

13  Honor.

14          THE COURT:  Well, you know that one of the factors

15  that the Court has to consider is the relative culpability of

16  this defendant versus the other, what is it, five other

17  defendants in this case in making it a sentence that doesn't

18  have unwarranted sentencing disparity, so it is something

19  that I actually have to take into consideration.  So I

20  assumed you probably thought about that in the context of

21  asking me for a probated sentence?

22          MR. FRY:  I think that also if he was on

23  probation -- he's working now at legitimate employment.  He's

24  working at a flower company with 30 people under him.  If he

25  was on the five years, he could make restitution payments to

1    pay back the victims at a higher rate now than if he goes

2    into the penalty, comes out and then has to find a job.  So,

3    he -- and I understand the Court's position succinctly.  I

4    just want the Court to at least consider probation.  He's

5    been five years on probation -- on pretrial release, no

6    violations, he's had a monitored.  He's assured me that if he

7    is granted a five-year probated sentence he could abide by

8    any conditions that the Court puts on him.

9              His family of three children and his wife

10   depend on him for their support, and that would greatly hurt

11   them if he was not able to continue his employment.  So we

12   would ask the Court to consider it.  And I understand the

13   Court's position as it pertains to other defendants.

14             I would ask that if the Court does not consider

15   probation that the lower, the Court lowers it to two,

16   five-year sentences running concurrent, two 60-month

17   sentences running concurrent.  If the Court has the ability

18   to run it concurrent, we would ask for two, 60-month

19   sentences to run concurrent.

20             And we would also ask that he be allowed to

21   self report if he has to go into custody instead of being

22   taken into custody today, and we would ask that the Court

23   recommend a penitentiary close to Houston where his family

24   is.

25             THE COURT:  Okay.

1            MR. FRY:  That's all I have, Your Honor.

2            THE COURT:  Mr. Farmer, would you like to say

3   anything in your own behalf, please, sir?

4            THE DEFENDANT:  I would, Your Honor.

5            THE COURT:  Yes, please.

6            THE DEFENDANT:  I'd like to start by saying that I

7   am very sorry for the people that I hurt through this scheme.

8   I knew at the time that it was morally wrong and ethically

9   wrong.  I did not appreciate the criminal context of what we

10  were doing as it appeared to be at the time.

11           THE COURT:  What does that mean you didn't

12  appreciate it?  I got the list of the victims on this

13  spreadsheet.  I don't remember what the total number was.

14  What's the total number of victims that I have?  I don't even

15  know.  What's the total number?

16           MR. MARTIN:  It's over 2,000.

17           THE COURT:  Okay.  2,000 victims.

18           MR. MARTIN:  And those are just the ones that were

19  identified.

20           THE COURT:  That came forward, with $8 million in

21  losses.

22            Tell me what you mean when you say you didn't

23  appreciate the severity of what you were doing.

24           THE DEFENDANT:  I understood at the time that what

25  we were doing was wrong in that we were inducing people to

1    buy stocks that had very little or no future.  However, I

2    took the counsel of Mr. Austin that it was not criminal in

3    nature.  And that if I had understood the criminal

4    ramifications of our actions, I would like to say that I

5    would have not continued in the organization and would not

6    have let Mr. Austin begin the basic group to start with.

7              THE COURT:  So basically this fell into the category

8    of there's a sucker born every minute, and if they think

9    they're going to make some money, that's on them, huh?

10             THE DEFENDANT:  I'm not proud of saying it, but,

11   yes, that was the intent of the scheme.

12             THE COURT:  Okay.

13                  So in terms of your relative culpability

14   vis-a-vis the other six -- well, how many is it, one, two,

15   three, four, five, six people that I have to sentence in this

16   case.  I think I have sentenced one already, Grob.

17             THE DEFENDANT:  I think it was two, Your Honor.

18             THE COURT:  Grob.  And I think I might have

19   sentenced Austin.

20             THE DEFENDANT:  Grob.

21             THE COURT:  Brotherton and Grob.  I still have the

22   others ones left to sentence.

23                  So relative to their involvement in this

24   scheme, how do you rate your relative culpability to these

25   other six?

1           THE DEFENDANT:  I believe that Mr. Austin, Mr.

2    Brotherton, Mr. Sieck and myself share an equal level of

3    culpability as partners making partnership decisions as to

4    the scheme that we perpetrated and how it would be carried

5    out.

6                I believe that Mr. Massey shares a less

7    culpability because he was an employee and not a partner.

8    And I must be honest.  I believe Mr. Grob bears no

9    culpability whatsoever.

10          THE COURT:  Ms. Who?

11          THE DEFENDANT:  Mr. Grob.

12          THE COURT:  Oh, Mr. Grob.

13          THE DEFENDANT:  If at any point Mr. Grob had been

14   represented by counsel that had not been paid for by the

15   group and instructed on their plan by Mr. Austin, I think if

16   any independent counsel could have gotten to Mr. Grob, he's

17   not at fault.

18          THE COURT:  Who was the other person you said was

19   just an employee?

20          THE DEFENDANT:  Mr. Massey.

21          THE COURT:  Oh, Mr. Massey.

22          THE DEFENDANT:  But I don't want to in any way

23   lessen my responsibility.  I am 100 percent responsible for

24   my actions and the actions of everybody that worked for us,

25   the actions of everybody who contracted for us and even the

1  actions of my partners.  At any point in time I could have
2  and should have walked away or stopped.

3              THE COURT:  The reason I am asking, of course, you
4  heard me have this conversation with your counsel.  He is
5  asking for probation, and I have got all these other people
6  yet to sentence.  I have only sentenced one or two out of the
7  other six people that I still need to sentence in this case.
8  And so, obviously I can't have an unwarranted sentencing
9  disparity between you and these other people, and so that's
10  the reason that I was asking the question.  And Mr.
11  Brotherton has already been sentenced to a term of 60 months
12  custody in this case, someone, as you say, you at least have
13  equal culpability with in terms of your actions.

14              THE DEFENDANT:  Yes, Your Honor.  I don't argue with
15  that.

16              THE COURT:  Anything else you want to say?

17              THE DEFENDANT:  I do.

18              THE COURT:  Yes, please.

19              THE DEFENDANT:  I would like to say that over the
20  past five years I have worked very hard to change who I am.
21  I have opened a business for myself making furniture selling
22  $5,000 tables.  I am gainfully employed now at the largest
23  flower shop in the Houston Metro area.  I am director of
24  operations with them.  I have 30 people that work under me.
25              THE COURT:  Is that your own business or are you

1  working for somebody else?

2          THE DEFENDANT:  I am working for somebody else.

3          THE COURT:  Okay.  I was a little unclear.  I wasn't

4  sure.

5          THE DEFENDANT:  I'm sorry, Your Honor.  The

6  furniture thing was my business.

7          THE COURT:  Right.

8          THE DEFENDANT:  And the flower shop thing is a local

9  business.

10         THE COURT:  And then in the last five years you've

11  had a couple more kids, I see.

12         THE DEFENDANT:  I have one additional child.

13         THE COURT:  Oh, because this report is dated 2020.

14         THE DEFENDANT:  2011 was the --

15         THE COURT:  How old are your kids?

16         THE DEFENDANT:  10, 6 and 4.

17         THE COURT:  Oh, my goodness.  Time has gone by.

18         THE DEFENDANT:  Yes, it has, Your Honor.

19              Anyway, the point was that I've done a lot to

20  come to what I am now.  And it was not easy to find an

21  employer that was going to overlook -- not overlook,

22  understand my situation and allow me to use the skills I do

23  have to become the member of society, or the citizen, I

24  guess, that society should rightfully expect me to be.

25         THE COURT:  All right.

1              Anything else from the United States?

2         MR. MARTIN:  Yes, Your Honor.

3              In fairness to Mr. Farmer, Brotherton's

4    sentence was five years, but he didn't get a 5K; but he was,

5    in my view, less culpable than Mr. Farmer, which is why even

6    with the 5K I am still recommending a sentence of 72 months.

7    I think that fairly reflects his culpability vis-a-vis these

8    other defendants.  And certainly I don't think a sentence of

9    probation is appropriate when Mr. Grob got -- when Mr. Grob

10   got a sentence of imprisonment I believe of 12 months and he

11   was the least culpable, I don't think a sentence of probation

12   would be appropriate here.

13             Mr. Farmer did meet with us many times, and he

14   was very forthcoming in my judgment, once he decided to

15   cooperate.  He, of course, decided to cooperate after some of

16   the other defendants, which I believe gives them a reason to

17   take into consideration that Mr. Farmer should get a higher

18   sentence than those defendants should get.  So I think the

19   Court should take that into consideration as well.  So my

20   recommendation is 72 months.

21        THE COURT:  All right.

22             The Court will state the sentence at this time.

23   The lawyers will have a final opportunity to make any

24   objections before the sentence is finally imposed.

25             It is the judgment of this Court that the

1  defendant, Andrew Ian Farmer, is hereby committed to the
2  custody of the Bureau of Prisons to be imprisoned for a term
3  of 60 months as to Count 1SSS and 12 months as to Count 2SSS
4  to run consecutively for a total term of imprisonment of 72
5  months.

6            The defendant is before this Court for
7  sentencing as a result of his conviction for conspiracy to
8  commit wire fraud, that is Count 1SSS, and securities fraud,
9  Count 2SSS.  Farmer was a partner and considered the primary
10 leader of the group.  He had a major role in the group in
11 making business decisions, including hiring, firing,
12 approving of business expenses, creating and approving the
13 story arc for each new company.  Farmer was a member of the
14 conspiracy from the group's founding in or about May of 2011
15 to the end of the conspiracy, about May of 2017.

16           His primary responsibility was setting up each
17 company whose stock was going to used in each pump and dump
18 scheme.  Farmer was responsible for distributing the proceeds
19 of the fraud to the other partners and paying the group's
20 employees.  Farmer funded the group's business expenses using
21 his credit card and is responsible for defrauding investors
22 of the total loss of $50,045,977.65.

23           Farmer is held accountable for all acts and
24 omissions of others that were within the scope of the jointly
25 undertaken criminal activity in furtherance of that criminal

1    activity and reasonably foreseeable in connection with the

2    criminal activity that occurred during the commission of the

3    offense of conviction in preparation for that offense or in

4    the course of attempting to avoid detection or responsibility

5    for that offense.

6              The offense involved a violation of a prior

7    specific judicial administrative order, injunction, decree or

8    process not addressed elsewhere in the guidelines, and the

9    offense involved sophisticated means of conduct such as

10   hiding assets and transactions with the use of fictitious

11   entities, corporate shells, offshore financial accounts, and

12   that ordinarily indicates sophisticated means.  Farmer is

13   also deemed to be the organizer/leader in the criminal

14   activity that involved five or more participants or was

15   otherwise extensive.

16             The defendant does not have any prior

17   convictions.  His total offense level is 38, criminal history

18   of 1, which establishes the guideline range of 235 to 293

19   months.  However, the statutory maximum is 120 months.

20   Additionally, the defendant was granted a 5K by the

21   government with a recommendation that the defendant be

22   sentenced to a term of 72 months.

23             The Court believes that a sentence of 72 months

24   is appropriate when considering the defendant's relative

25   culpability as it relates to the other co-defendants in this

case, one of whom has already been sentenced to 60 months,
and that it takes into consideration the sentencing
objectives of punishment, deterrence and incapacitation and
is sufficient but not greater than necessary to punish the
defendant for the crimes committed in this case.

Upon release from imprisonment the defendant
shall be placed on supervision, supervised release for a term
of three years as to each of Counts 1SSS and 2SSS, to run
concurrently for a total term of supervision of three years.
A three-year term of supervision is imposed in order to
protect the public and to ensure that restitution payments
will be made.

Within 72 hours of release from the custody of
the Bureau of Prisons the defendant shall report in person to
the probation office in the district to which the defendant
is released.  Following supervised release the defendant
must comply with the standard conditions that have been
adopted by this Court, any additional conditions required by
law and the following mandatory conditions:

The defendant may not incur any new credit
charges or open additional lines of credit without approval
of the probation office.  You must submit to substance abuse
testing to determine if you have used a prohibited substance,
and you must pay the cost of testing if financially able to
do so.  You may not obstruct or tamper with any testing

1 methods.

2       The defendant is prohibited from employment or
3 acting in a fiduciary role during the term of supervision.
4 The defendant must pay to the United States a special
5 assessment of $200, due and payable immediately.

6       The Court finds that the defendant does not
7 have the financial ability to pay a fine within the guideline
8 range in addition to the restitution amount, and the fine is
9 waived in this case.

10       The defendant is ordered to pay restitution in
11 the amount of $8,092,738.49 to the victims identified in the
12 document that has been filed of record with the Court as
13 Instrument No. 527, which was filed on 6-17-21, which
14 contains a list of some 2,000 victims of this scheme that
15 have reported restitution owed in that amount.

16       The payment of the criminal monetary penalties
17 are due as follows:  $200 due and payable immediately, any
18 unpaid balance due in installments of $25 dollars per quarter
19 or 50 percent of any wages earned while in prison.  Any
20 balance remaining after release from imprisonment shall be
21 paid in monthly installments of no less than $800 per month
22 to commence 30 days after release to a term of supervision.
23 Payments are to be made through the United States District
24 Clerk's office, Southern District of Texas.

25       Mr. Martin, do you know of any reason why the

1    sentence should not be imposed as stated?

2        MR. MARTIN:  Just a couple of matters, Your Honor.

3            We are requesting an additional condition of

4    supervised release because there is an ongoing matter which

5    could potentially extend --

6        THE COURT:  But what does that have to do with me?

7    Isn't that just part of y'all's plea agreement?  If you think

8    that it's not being complied with, what am I supposed to do,

9    revoke him?

10        MR. MARTIN:  The plea agreement ends today.  And so

11    we are asking for the supervised release to create a --

12        THE COURT:  Create a what?  How does that work

13    exactly?  Tell me how you envision that in your mind.  I

14    didn't get it.  I heard about it.  I didn't get a copy of

15    whatever it was that you sent to whoever you sent it to.

16        MR. MARTIN:  Well, just that if he is released from

17    prison and the matter was still ongoing.

18        THE COURT:  Let me see what it is.  I didn't get it.

19    Let me look at it.  I don't know who you sent it to.  Who did

20    you send that to?

21            Tell me how that works in your division,

22    because I have never done this before, so I am trying to

23    envision what you think.

24            It says you have to fully cooperate with the

25    United States.  So like you call us up and say, he is not

1    being cooperative.  Why don't you revoke him on that basis,

2    or how does that work?

3              MR. MARTIN:  It would be up to you to decide whether

4    to revoke him on that basis.

5              THE COURT:  It would be up to me to decide whether

6    or not he was cooperating with you or not cooperating with

7    you?

8              MR. MARTIN:  Well, I mean, I would file a motion

9    saying he was not cooperating, and then it would be up to you

10   to decide whether that warranted revocation or not.

11             THE COURT:  Tell me when you have done this before.

12             MR. MARTIN:  I have never done it before.

13             THE COURT:  Me either.

14             MR. MARTIN:  It's being requested by another

15   district.

16             THE COURT:  Pardon me?

17             MR. MARTIN:  It's being requested in another

18   district, and they have requested this language.

19             THE COURT:  By "another district," where this charge

20   is pending?

21             MR. MARTIN:  Where the matter is pending.

22             THE COURT:  What's pending?

23             MR. MARTIN:  An investigation that he is cooperating

24   with.

25             THE COURT:  So where he has potential charges facing

1  him in that?

2         MR. MARTIN:  No.  He's cooperating against other

3  individuals.

4         THE COURT:  Oh, against other individuals.  Not a

5  case involving him.

6         THE DEFENDANT:  Your Honor, if I may.

7         THE COURT:  Not a case involving any activity on his

8  part?

9         MR. MARTIN:  Correct, Your Honor.

10        THE COURT:  Okay.  I just wanted to make sure that I

11 understood what you were talking about.

12             Who was that?  Mr. Farmer.

13        THE DEFENDANT:  If I may.  I have no objection to

14 it.  I have been cooperating.  I intend to continue to

15 cooperate.  I am not fighting this particular language.  This

16 case is in two other districts.  And I intend to continue

17 cooperating with Mr. Martin and the other attorneys, if that

18 makes a difference in what they're trying to do.  I am not

19 objecting to it.

20        THE COURT:  So you are saying it's not going to be

21 you.  It's going to be some other AUSA in some other district

22 that's going to call up and say, hey, he is not cooperating

23 with us the way he is supposed to.

24        MR. MARTIN:  He would have to call me and then I

25 would have to file a motion and then it would be up to you to

1    decide whether it warranted revocation or not.

2              THE COURT:  I think I am going to take a pass on

3    that.

4                   What else?

5              MR. MARTIN:  And then the only other issue is I

6    submitted a proposed order that imposes the money judgment.

7              THE COURT:  Right.  I got that.  I got those to do

8    in a minute.

9                   Anything else with respect to the sentence?

10             MR. MARTIN:  No, Your Honor.

11             THE COURT:  Okay.

12                  Mr. Fry, do you know of any reason why the

13   sentence should not be imposed as stated?

14             MR. FRY:  I do not, Your Honor.

15             THE COURT:  Then the sentence is imposed as stated.

16                  Mr. Farmer, you can appeal your conviction if

17   you think that your guilty plea is somehow unlawful or

18   involuntary or if you think that there was some other

19   fundamental defect in the proceeding that was not waived by

20   you.  However, a defendant can waive -- wasn't there a waiver

21   in this case?

22             MR. MARTIN:  Yes, Your Honor.

23             THE COURT:  Yes.  The defendant can waive those

24   rights as part of a plea agreement in this case.  In this

25   case you waived your right to appeal.  That waiver is

1   generally enforceable.  If you think your waiver is

2   unenforceable for some reason, you can present that theory to

3   the Court of Appeals.  And if you are without funds to hire

4   an attorney to represent you, you can apply to the Court for

5   in forma pauperis status and counsel will be appointed for

6   you.  With few exceptions any notice of appeal must be filed

7   within 15 days of the date that judgment is being entered in

8   this case.

9               Do you understand me?

10              THE DEFENDANT:  I do, Your Honor.

11              THE COURT:  Part of the plea agreement involved an

12  order for the imposition of a money judgment at sentencing.

13  That was unopposed, correct, Mr. Fry?

14              MR. FRY:  Yes.

15              THE COURT:  Then the Court is signing the order

16  imposing a money judgment in the amount of $6 million.

17              The United States has also moved to dismiss the

18  remaining counts of the indictment pursuant to the plea

19  agreement.  The Court has signed an order dismissing the

20  remaining counts of the indictment.

21              Mr. Martin, anything else?

22              MR. MARTIN:  No, Your Honor.

23              THE COURT:  Mr. Fry, anything else?

24              MR. FRY:  Just for --

25              THE COURT:  Oh, I forgot.  Give me one second.  I'm

1  sorry, Mr. Fry.

2              The defendant is on bond, been on bond.

3              Mr. Farmer, have you had any new law violations

4  since you have been on bond?

5              THE DEFENDANT:  Your Honor, the only violation I had

6  was I got a speeding ticket when I left here after getting my

7  ankle monitor removed.

8              THE COURT:  Okay.

9              Does the United States have any objection to

10  the defendant remaining on bond pending designation?

11              MR. MARTIN:  No, Your Honor.

12              THE COURT:  All right.

13              Was there anything else, Mr. Fry?  Excuse me.

14  Go ahead, sir.

15              MR. FRY:  I would ask permission to withdraw from

16  this case at this time, Your Honor.

17              THE COURT:  Okay.  I have got two things.  You know

18  what else I forgot, something else you already asked me to

19  do.  It's the further recommendation of this Court that the

20  defendant be incarcerated as close to Houston as possible.

21              Wasn't there one more thing that you asked me,

22  Mr. Fry?  I forgot.

23              MR. FRY:  No.  That was it.  Report on his own and

24  be incarcerated close near here.

25              THE COURT:  And the defendant be allowed to self

1 | surrender.  And he'll be allowed to self surrender.

2 |               Now, Mr. Fry.  I'm sorry.  I just keep

3 | forgetting stuff.

4 |          MR. FRY:  May I have permission to withdraw from the

5 | case?

6 |          THE COURT:  All right.  You will.  Why don't you

7 | send me an order so that I can have it of record.

8 |          MR. FRY:  I will, Your Honor.

9 |          THE COURT:  And I will sign that as soon as you send

10 | it to me.

11 |               Anything else?  Nothing else?

12 |          MR. FRY:  No, Your Honor.

13 |          THE COURT:  Thank you.  You all are excused.

14 |          THE DEFENDANT:  Thank you, Your Honor.

15 |          MR. FRY:  Thank you, Your Honor.

16 |

17 |

18 |               (Conclusion of proceedings)

19 |

20 |

21 |

22 |

23 |

24 |

25 |

CERTIFICATION

I, Fred Warner, Official Court Reporter for the United States District Court for the Southern District of Texas, Houston Division, do hereby certify that the foregoing pages 1 through 24 are a true and correct transcript of the proceedings had in the above-styled and numbered cause before the Honorable VANESSA D. GILMORE, United States District Judge, on the 21st day of June, 2021.

WITNESS MY OFFICIAL HAND at my office in Houston, Harris County, Texas on this the 30th day of June, A.D., 2021.


/s/ Fred Warner
Fred Warner, CSR
Official Court Reporter