# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| ANDREW IAN FARMER, | § | |
| BOP # 14677-479 | § | |
| | § | CRIMINAL NO. 4:16-408-1 |
| | § | |
| VS. | § | CIVIL ACTION NO. 4:22-4307 |
| | § | |
| | § | |
| UNITED STATES OF AMERICA | § | |

## UNITED STATES' RESPONSE IN OPPOSITION TO FARMER'S 28 U.S.C. § 2255 MOTION

The United States respectfully requests that this Court deny the § 2255 Motion filed by Andrew Farmer because the record conclusively shows that no relief is appropriate. *United States v. Santora*, 711 F.2d 41 (5th Cir. 1983).

Farmer's ineffective assistance of counsel claim related to his sentencing (Ground One) is contradicted by the record and Farmer fails to meet his burden under *Strickland* to show that counsel performed deficiently, causing him prejudice. Furthermore, Farmer's knowing and voluntary waiver of his right to seek relief under § 2255 bars his sentencing-disparity claim (Ground Two) which is, in any event, not cognizable under § 2255. *See* DE 363, pg. 4.

## I.     Background.

### a.     Farmer committed wire and securities fraud through a pump and dump scheme.

In February 2019, a two-count Information was filed against Farmer, charging him with one count of conspiracy to commit wire and securities fraud, and one count of securities fraud.  PSR, para. 9.[1]  In between May 2011 and May 2017, Farmer and his "associates perpetrated a securities fraud scheme to defraud investors of their money by fraudulently manipulating the market price and demand for various microcap securities, commonly referred to as 'penny stocks.'"  PSR, para. 20.

Farmer, who was "considered the primary leader" of the group, would "fraudulently inflate[] the price of the stock through various techniques including false and misleading press releases, match trades, and wash sales."  PSR, paras. 20, 24.  "Farmer's primary responsibility was setting up each Company whose stock was going to be used in each pump and dump scheme."  PSR, para. 24(a).  Farmer would invent a "story arc for each new company," such as "Onyx Service and Solutions,

---

[1] "PSR, para." citations refer to the presentence investigation report prepared by the United States Probation Office on August 1, 2019, and the corresponding paragraph.

Inc., a company purportedly involved in solar construction projects," and Nova Mining Corp., a company purportedly involved in developing domestic and international mining claims," among many others.  PSR, para. 21.

Farmer's scheme followed the same basic pattern:

1. Obtain all or nearly all of the freely tradable shares of the company through a sham initial public offering, or purchase of the shares through a third party,

2. Install a sham CEO of the company,

3. Conceal from regulators and investing public the fact that Farmer and his co-defendants controlled the shares of the company by splitting the shares into "nominees"[2] accounts,

4. Fraudulently create artificial volume and prices through match trades and wash sales,[3]

5. Disseminate false and misleading information about the company to increase price and demand for the stock

---

[2] A nominee is a person or company whose name is given as having title to a stock, but who is not the actual owner.  PSR, para. 22(b), n. 2.

[3] A match trade is an order to buy or sell a security that is entered with knowledge that a matching order on the opposite side of the transaction has or will be entered. A wash sale is an order to buy or sell a security resulting in no change of beneficial ownership (selling a stock to yourself).  Both match trades and wash sales are fraudulent when they are done for the purpose of (1) creating a false or misleading appearance of active trading in any publicly traded security; or (2) creating a false or misleading appearance with respect to the market for any such security.  PSR, para. 20, n. 1.

through a promotional campaign including press releases, click ads, and websites (the "Pump"),

6.  Sell the stock to the public at the fraudulently inflated prices (the "Dump"),

7.  Distribute the profits among the members of the conspiracy,

8.  Stop promoting the stock, stop any operations of the company, and move on to the next scheme, resulting in the company's stock collapse, causing investors to lose millions of dollars.

PSR, paras. 22-23.

In total, the pump and dump schemes perpetrated by Farmer raked in over 50 million dollars.  PSR, para. 61.

| Stock Name | First Trade | Last Trade | Shares Sold | Gross Sales |
|---|---|---|---|---|
| Onyx Service & Solutions | 09/21/2011 | 02/17/2012 | 1,749,808 | $3,249,320 |
| DOMARK International | 06/03/2011 | 05/25/2012 | 5,236,462 | $9,167,928 |
| Nova Mining | 11/08/2011 | 12/07/2012 | 2,226,782 | $2,454,359 |
| Chimera Energy | 05/31/2012 | 11/20/2012 | 9,962,468 | $6,907,995 |
| Massive Dynamics | 09/11/2012 | 10/23/2013 | 12,017,508 | $6,837,614 |
| Solar America | 11/20/2012 | 05/13/2013 | 1,477,392 | $643,542 |
| BlueFire Equipment | 06/24/2013 | 02/11/2014 | 4,593,424 | $2,177,664 |
| Puget Technologies | 08/08/2013 | 05/29/2014 | 17,071,860 | $9,399,509 |
| Gankit Corporation | 11/21/2013 | 04/29/2014 | 2,668,064 | $2,484,233 |
| Horizon Energy | 08/05/2013 | 10/20/2014 | 7,884,281 | $1,322,809 |

| Nhale | 07/07/2014 | 01/07/2015 | 2,968,076 | $1,366,260 |
| Valmie Resources | 12/08/2014 | 05/04/2017 | 4,771,693 | $4,034,745 |
| **Grand Total** | **06/03/2011** | **05/04/2017** | **72,627,818** | **$50,045,978** |

### b. Farmer entered a guilty plea, waiving his right to appeal, and collaterally attack his sentence.

Farmer appeared before the district court (Gilmore, J.) in February 2019, and entered a guilty plea to both charges in the Information. DE 675, pg. 18.[4] Important here, Farmer also entered into a written plea agreement with the Government. DE 675, pg. 18; *See* DE 363, pgs. 1-16.

As part of his plea agreement, Farmer waived the right to appeal or collaterally attack his conviction and sentence. DE 363, pg. 4. Farmer's plea agreement did contain a provision stipulating that he maintained the right to assert an ineffective assistance of counsel claim on collateral review if appropriate. DE 363, pg. 4. Farmer agreed he was "aware that a sentence has not yet been determined by the Court" and that discussions he may have had with his attorney, or the Government, concerning his sentence, were a "prediction and not a promise.'" DE 363, pg. 4. Farmer acknowledged he "consulted with my attorney and fully understand all my rights with respect to the indictment pending against

---

[4] At his re-arraignment hearing, Farmer was represented by Chris Flood.

me" and that he was voluntarily entering into the plea agreement and binding himself to its terms.  DE 363, pg. 16.

At the re-arraignment hearing, the district court asked the Government to summarize the plea agreement, and Farmer acknowledged that he agreed to its terms, including the waiver of appeal. DE 675, pg. 6, 10.  Farmer also indicated he understood that the district court maintained sole discretion to fashion a sentence as it saw fit.  DE 675, pg. 9.  The district court finished by placing Farmer under oath and asking, "Do you solemnly swear that you have read and understand this plea agreement and you willingly signed the plea agreement at this time so help you God."  DE 675, pg. 18.  Farmer responded, "I do."  DE 675, pg. 19.  The district court accepted Farmer's guilty plea and found him guilty. DE 675, pg. 19.

### c.  Farmer was sentenced to 72-months' imprisonment.

Farmer appeared for sentencing before the district court in June 2021.[5]  DE 667, pg. 1.  Although the sentencing guidelines offense level was determined to be 38, yielding a range of 235 to 293 months

---

[5] Following his guilty plea, Farmer's attorney, Chris Flood, filed a motion to withdraw as attorney of record, which was granted.  DE 388, pg. 1; DE 389, pg. 1.  Farmer was then appointed counsel Gerald Fry, who represented him for the remainder of the case.  DE 395, pg. 1.  In his § 2255 motion, Farmer only mentions Fry.

imprisonment, the 60-month statutory maximum for Farmer's crimes led to a guidelines recommended sentence of 120 months' imprisonment. PSR, para. 134; DE 667, pgs. 3-4. Prior to sentencing, the United States filed a "motion for downward departure under U.S.S.G. § 5K1.1, making a specific recommendation for the departure." DE 667, pg. 5.

The district court heard arguments from Farmer, who asked for a probated sentence. DE 667, pgs. 5-7. Farmer cited his success during pre-trial release and his family situation as reasons probation may be appropriate. DE 667, pg. 6. Farmer also argued that "he's working now at legitimate employment . . . he could make restitution payments to pay back the victims at a higher rate now than if he is going into the penalty, comes out and then has to find a job." DE 667, pgs. 6-7. Farmer stated, "I understand the Court's position succinctly. I just want the Court to at least consider probation." DE 667, pg. 7. Finally, Farmer argued, if the district court were to reject the probation argument, then a sentence of 60-months' imprisonment on each count to run concurrently, would be appropriate.

Farmer, speaking for himself, added that he was "very sorry for the people that I hurt through this scheme." DE 667, pg. 8. When asked

about his relative culpability in comparison to his co-defendants Farmer expressed that he thought he was equally culpable with "Mr. Austin, Mr. Brotherton, [and] Mr. Sieck" but also told the district court, "But I don't want in any way to lessen my responsibility.   I am 100 percent responsible for my actions and the actions of everybody that worked for us, the actions of everybody who contracted for us and even the actions of my partners.  At any time, I could have and should have walked away or stopped."   DE 667, pgs. 10-11.   Further addressing sentencing disparity, the district court stated, "Mr. Brotherton has already been sentenced in this case [to 60 months' imprisonment], someone, as you say, you at least have equal culpability with in terms of your actions."  DE 667, pg. 11.  Farmer replied, "Yes, Your Honor, I don't argue with that." DE 667, pg. 11.

The Government recommended a sentence of 72 months' imprisonment.  DE 667, pg. 13.  The district court agreed and sentenced Farmer to 60-months imprisonment as to Count One, and 12-months' imprisonment as to Count Two, to be run consecutively.  DE 667, pg. 14. The district court explained its reasoning, finding:

- Farmer was a partner in the group and considered the primary leader, having a major role and making business decisions,
- Farmer created the "story arc" for each company,
- His primary responsibility was setting up the companies whose stocks were going to be used in each pump and dump,
- He was one of the group's founding members,
- He funded the groups business expenses using his credit card,
- Farmer was responsible for defrauding investors to the total loss amount of $50,045,977.65.

DE 667, pg. 14.

In pronouncing its sentence, the district court also stated, "The Court believes that a sentence of 72-months is appropriate when considering the defendant's relative culpability as it relates to the other co-defendants in this case, one of whom has already been sentenced to 60 months." DE 667, pgs. 15-16.

## II.    Farmer's 28 U.S.C. § 2255 motion.

Farmer asserts two grounds for relief.  DE 661, pg. 4-5.  The overall pith of Farmer's argument is his belief that his sentence is too long.  He claims:

1)    That he received ineffective assistance of counsel from his attorney at his sentencing hearing, specifically

related to the arguments his attorney made for a sentence of probation.

2)    That the district court should "resentence me to the same 36-month sentence that was given to" his co-defendants to correct what he believes is a "sentencing disparity between similarly situated co-defendants."

DE 661, pgs. 4-5.[6]

First, Farmer's allegation that he received ineffective assistance of counsel is wrong. His motion merely second guesses the tactics and strategy employed by his attorney. This does not prove a constitutional

---

[6] Besides being meritless, waived, and otherwise not cognizable, it is not even clear that Farmer's motion is timely. This Court could dismiss it for that reason alone. Farmer admits the motion was filed outside of the one-year period following his conviction becoming final, but seemingly asserts the complaint is timely under § 2255(f)(4)—one year following the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence. But Farmer's first ground for relief focuses entirely on events that occurred at his sentencing hearing. He certainly could have made these arguments—that his attorney performed deficiently at sentencing—well before knowing about the facts related to his co-defendants' sentences. Ground One can be dismissed as untimely. *See* 28 U.S.C. § 2255(f)(1): *United States v. Plascencia*, 537 F.3d 385, 388 (5th Cir. 2008). As to Ground Two, Farmer likewise has not shown the motion is timely. Farmer writes that the "statutes of limitations under 28 U.S.C. § 2255 would not expire until, at the earliest, the one-year anniversary of the Austin and Sieck sentencing." DE 661, pg. 11. Co-defendant Austin was sentenced on December 6, 2021, and Sieck was sentenced prior to that on November 15, 2021. Farmer did not file his motion until more than a year later, on December 8, 2022. DE 661, pg. 13. By his own calculation, Farmer's motion is untimely. Thus, both grounds for relief can be dismissed as untimely. In spite of this, because Farmer's complaints are meritless, not cognizable, and waived, the Government will, for the sake of argument, address his complaints in further detail.

deprivation of the right to counsel. He has not shown deficient performance or that he was prejudiced by it.

Second, Farmer's complaint that his sentence is longer than that of his co-defendants is not a cognizable issue in a § 2255 motion. Section 2255 is reserved for a narrow set of complaints involving constitutional and jurisdictional issues. Relief is not contemplated for the mere dissatisfaction with a sentence (a complaint surely every prisoner could raise). Not only is his complaint not cognizable in a § 2255 motion, it is also waived by his knowing and voluntary waiver of the right to collaterally challenge his conviction and sentence. The United States seeks to enforce the waiver.

Farmer's motion should be denied.

## III. Applicable law.

### a. 28 U.S.C. § 2255 provides limited relief that must be supported by evidence of constitutional or jurisdictional violations.

Motions pursuant to 28 U.S.C. § 2255 may seek relief only for particular types of error. A movant may raise a jurisdictional or constitutional claim. 28 U.S.C. § 2255(a). Additionally, a prisoner "may claim the right to be released based upon the ground that the sentence

was in excess of the maximum authorized by law." *Id*. A collateral challenge "may not do service for an appeal." *United States v. Frady*, 456 U.S. 152, 165 (1982). If the claim asserted in a § 2255 motion could have been raised on direct appeal, but was not, the issue is considered to be procedurally defaulted. *United States v. Cervantes*, 132 F.3d 1106, 1109 (5th Cir. 1998). *Id*.

Here, because Farmer is proceeding *pro se*, his pleadings are reviewed under a less stringent standard than those drafted by an attorney and are entitled to be construed liberally. *Haines v. Kerner*, 404 U.S. 519 (1972). Although Farmer's *pro se* pleadings are construed liberally, he is still required to provide sufficient facts in support of his claims. *United States v. Pineda*, 988 F.2d 22, 23 (5th Cir. 1993). Even under the rule of liberal construction, "mere conclusory allegations on a critical issue are insufficient to raise a constitutional issue." *Id*. Accordingly, "[a]bsent evidence in the record, a court cannot consider a habeas petitioner's bald assertion on a critical issue in his *pro se* petition . . . to be of probative evidentiary value." *Ross v. Estelle*, 694 F.2d 1008, 1011 (5th Cir. 1983).

A 28 U.S.C. § 2255 motion may be resolved without an evidentiary hearing where, as here, the files, the motion, and record of the case conclusively show that no relief is appropriate. *Santora*, 711 F.2d at 41. If the record is adequate to dispose of the allegations fairly, the court need inquire no further. *United States v. Smith*, 915 F.2d 959, 964 (5th Cir. 1990). Under these circumstances, a district court may deny a § 2255 motion without an evidentiary hearing and grant a motion for summary judgment for the Government. *United States v. Batamula*, 823 F.3d 237, 239 (5th Cir. 2016).

### b.    Proving counsel was constitutionally ineffective requires a showing akin to incompetence.

Farmer's first claims is that his attorney was ineffective. To prevail on such a claim, Farmer must satisfy the familiar two-prong analysis set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Under that standard, a movant must demonstrate that counsel's performance was both deficient and prejudicial. *Id.* This means that a movant must show that counsel's performance was outside the broad range of what is considered reasonable assistance. *United States v. Dovalina*, 262 F.3d 472, 474-75 (5th Cir. 2001).

Counsel's performance is strongly presumed to fall within the wide range of reasonable professional assistance. *Premo v. Moore*, 562 U.S. 115, 121 (2011). To overcome that presumption, a petitioner must "show that counsel made errors so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment." *Id.* at 121-22 (internal quotations omitted). "[T]he standard for judging counsel's representation is a most deferential one." *Id.* at 122. The purpose of the effective assistance guarantee . . . is not to improve the quality of legal representation," but instead "to ensure that criminal defendants receive a fair trial." *Strickland*, 466 U.S. at 689. "The question is whether an attorney's representation *amounted to incompetence* under 'prevailing professional norms.'" *Premo*, 562 U.S. at 122 (emphasis added).

The "failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim." *United States v. Bejarano*, 751 F.3d 280, 285 (5th Cir. 2014) (*quoting Strickland*, 466 U.S. at 668). If this Court can conclude, as a matter of law, that the movant "cannot establish one or both of the elements necessary to establish his constitutional claim, then an evidentiary

hearing is not necessary and [this Court] may [deny the motion]." *United States v. Walker*, 68 F.3d 931, 934 (5th Cir. 1995).

## IV.    Farmer's motion should be summarily denied.

Farmer's motion, even liberally construed, is based on pure speculation and conjecture.  Farmer fails to provide sufficient facts in support of his claims.  *Pineda*, 988 F.2d at 23.  His "mere conclusory allegations on a critical issue are insufficient to raise a constitutional issue." *Id*.  His claims are nothing more than "bald assertion[s]" and are of no "probative evidentiary value." *Estelle*, 694 F.2d at 1011.

Farmer's motion is nothing more than the second guessing of the events of his sentencing hearing.  Farmer argues that his attorney asked for too little jail time—the argument ostensibly being that because his attorney asked for probation, the district court in response gave him a longer sentence than it otherwise would have had his attorney asked for a prison sentence.  DE 661, pg. 4.  Farmer cites no authority for this novel argument that his attorney was constitutionally ineffective for asking for *too little* prison time.  And his conclusory assertion that the argument made by counsel somehow led to a longer sentence is purely conjecture.  "Section 2255 relief cannot be granted on pure speculation." *Rainey v.*

*United States*, No. 4:14-CV-980-A, 2015 WL 252876 at *4 (N.D. Tex. 2015).

The same logic applies to Farmer's second claim, which is even more terse and speculative than the first. Farmer seemingly recognizes the impossible standard he is asking the district court to be held to, stating: "[w]hile the Court could not have considered sentences that had not yet been issued at the time" of his sentence, it should nevertheless be found to have committed constitutional error by not doing so. DE 661, pg. 6. This argument is frivolous. This Court may rely on these facts alone to conclude the matter in favor of the Government.

### a. Trial counsel performed reasonably under the circumstances.

Farmer has not shown his attorney performed deficiently. His motion is of the ilk of "Monday-morning quarterbacking on a Thursday" that the Fifth Circuit has squarely rejected in examining ineffective assistance of counsel claims. *United States v. Molina-Uribe*, 429 F.3d 514, 520 (5th Cir. 2005). Having failed to satisfy the high bar *Strickland* requires to prove ineffectiveness, this Court must deny the motion. 466 U.S. at 687.

This Court will entertain a strong presumption that trial counsel's performance was constitutionally adequate. *Premo*, 562 U.S. at 121. "The question is whether an attorney's representation *amounted to incompetence* under 'prevailing professional norms.'" *Premo*, 562 U.S. at 122. (emphasis added). Farmer claims his attorney's performance fell below this constitutional standard. DE 661, pg. 4. He is wrong.

At sentencing, Farmer faced a maximum sentence of 120 months' imprisonment. DE 667, pg. 4. Defense counsel argued that in addition to the district court's consideration of the Government's recommendation for a downward departure under U.S.S.G. § 5K1.1 that is also "consider a probated sentence." DE 667, pg. 5. Counsel argued that because Farmer had been successful during the five years of his pretrial release it was logical that he would continue to adhere to the law and be gainfully employed. DE 667, pgs. 5-6. Counsel argued that if Farmer remained out of prison, he could continue to work, and thus pay back the restitution owed to the victims at a much faster rate. DE 667, pgs. 6-7.

It is apparent the district court was skeptical of this argument, stopping counsel several times in order to ask probing questions about the reality of Farmer receiving probation, given his "relative culpability"

17

in the case and the need to avoid an unwarranted sentencing disparity. DE 667, pg. 6.  Farmer complains in his § 2255 motion that had counsel "argued for a downward departure from the sentence requested by the AUSA instead of asking for probation" "there is a reasonable probability that th[e] court would have decided upon a significantly lower sentence." DE 661, pg. 4.  But Farmer's attorney did *precisely* this.  In the alternative to probation, counsel argued for a lower sentence than the Government recommended.  DE 667, pg. 7.  Farmer wholly ignores this fact.

Counsel argued: "I would ask that if the Court does not consider probation, that the lower, the Court lowers it to two, five-year sentences running concurrent, two 60-month sentences running concurrent.  If the Court has the ability to run it concurrent, we would ask for two, 60-month sentences to run concurrent." DE 667, pg. 7.

It is impossible to square those arguments with Farmer's complaint.  He is simply factually wrong about the events occurring during his sentencing.  Farmer's attorney, in fact, performed, exactly as Farmer now claims he failed to.

Counsel's performance is strongly presumed to fall within the wide range of reasonable professional assistance. *Premo*, 562 U.S. at 121. Farmer has not shown "that counsel made errors so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment." *Id.* at 121-22 (internal quotations omitted). A "conscious and informed decision on trial tactics and strategy cannot be the basis of constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." *Richards v. Quarterman*, 566 F.3d 553, 564 (5th Cir. 2009). It simply cannot be found that Farmer was deprived of his right to counsel when his attorney argued for probation, and in the alternative, a lesser sentence than that which the Government recommended. This ground for relief if frivolous.

### b. Farmer's sentencing disparity claim is waived, and not cognizable in a 28 U.S.C. § 2255 motion.

This Court need not even consider the merits of Farmer's second claim. The claim is waived by his plea agreement, and not cognizable in a 28 U.S.C. § 2255 motion.

A knowing and voluntary waiver of the right to collaterally attack a judgment or sentence bars a motion pursuant to § 2255. *United States v. Wilkes*, 20 F.3d 651, 653 (5th Cir. 1994). When determining whether

a plea or waiver was knowing or voluntary, a defendant's "solemn declarations in open court carry a strong presumption of verity." *Wilkes*, 20 F.3d at 653 (quoting *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977)). Accordingly, the Fifth Circuit affords "great weight to the defendant's statements at the plea colloquy." *United States v. Cothran*, 302 F.3d 279, 283-84 (5th Cir. 2002). Thus, a defendant who affirms, during rearraignment, that his plea and waiver were knowing and voluntary, faces a "heavy burden" if he argues otherwise in a later proceeding. *United States v. Diaz*, 733 F.2d 371, 373-74 (5th Cir. 1984). Where a defendant fails to meet that burden, he cannot prevail on a 2255 motion. *United States v. White*, 307 F.3d 336, 343 (5th Cir. 2002).

Here, Farmer makes no attempt to argue that his plea agreement was not made voluntarily. This Court should hold him to his word and enforce the waiver. The record shows there is no doubt that Farmer's guilty plea and written plea agreement was voluntary and knowingly made. DE 363, pg. 16; DE 675, pg. 18. Farmer's second claim, that his sentence is disparate from his co-defendants falls squarely within his waiver to collaterally attack his sentence and should be denied.

Moreover, even if Farmer's waiver did not bar this ground, it does not support relief. Farmer fails to show that his disparate sentence claim raises a constitutional or jurisdictional issue. *See United States v. Peddie*, 990 F.2d 626, *1 (5th Cir. 1993) (unpublished) (per curiam) (disparate sentencing claim not cognizable in a § 2255 proceeding). It is, therefore, not cognizable under § 2255. *Id.* Indeed, even on direct appeal, a defendant "cannot base a challenge to his sentence solely on the lesser sentence given by the district court to his co-defendant." *United States v. Boyd*, 885 F.2d 246, 249 (5th Cir. 1989). In light of Fifth Circuit precedent holding that a co-defendant's sentence is not a "yardstick" by which to measure other co-defendants' sentences under the more permissive review of direct appeal, Farmer cannot show that his claim is cognizable under the heightened standards that apply to a collateral attack under § 2255. *United States v. Sparks*, 2 F.3d 574, 587 (5th Cir. 1993).

Even if the claim were not barred by his waiver, it is not a cognizable ground for relief. *Peddie*, 990 F.2d 626, at *1.

21

## V.   Conclusion.

The United States respectfully requests that this Court deny Farmer's motion without further proceedings.  *Batamula*, 823 F.3d at 239.  The record conclusively demonstrates that no relief is appropriate; thus, no evidentiary hearing is needed.  *Santora*, 711 F.2d at 42.  Because reasonable jurists could not disagree with the denial of the § 2255 motion, no certificate of appealability should issue.  *See United States v. Bernard*, 762 F.3d 467, 483 (5th Cir. 2014).


Respectfully submitted,

ALAMDAR S. HAMDANI
United States Attorney

CARMEN CASTILLO MITCHELL
Chief, Appellate Division

/s/ *Michael A. Hylden*
Michael A. Hylden
Assistant United States Attorney
Southern Dist. Tex. Bar No. 3334738
Arkansas Bar No. 2015114
Attorneys for Respondent
1000 Louisiana Street, Ste. 2300
Houston, TX 77002
713-567-9436

## <u>CERTIFICATE OF SERVICE</u>

I, Michael A. Hylden, certify that the *United States' Response In Opposition To Farmer's 28 U.S.C. § 2255 Motion* was electronically filed with the United States District Court for the Southern District of Texas on June 21, 2023, and that on that date a true and correct copy of the document was placed in the outgoing mail, for delivery via certified mail, return receipt requested, to the last address of record for movant:

> Andrew Ian Farmer
> Reg. No. 14677-479
> FCI El Reno
> Federal Correctional Institution
> P.O. Box 1500
> El Reno, OK 73036

<u>/s/ *Michael A. Hylden*</u>
Michael A. Hylden
Assistant United States Attorney